1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

J.P.,

　　　　　Plaintiff,

　　v.

ANDREW SAUL,

　　　　　Defendant.

Case No. 20-cv-08253-LB

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMNT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 14, 18

## INTRODUCTION

　　The plaintiff J.P. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his claim for social-security disability insurance (SSDI) benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgement, the Commissioner opposed the motion and filed a cross-motion for summary judgement, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision without oral argument. The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings.

---

[1] Mot. – ECF No. 14 at 5. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*; Cross-Mot. – ECF No. 18; Pl. Reply – ECF No. 19.

**STATEMENT**

**1. Procedural History**

The plaintiff applied for SSDI benefits on August 6, 2014.[3] The Commissioner denied his claim on February 18, 2015, and again on August 11, 2015.[4] On August 20, 2015, the plaintiff asked for a hearing before an Administrative Law Judge (ALJ).[5] On May 23, 2017, the ALJ held a hearing and heard testimony from a vocational expert (VE) and the plaintiff.[6] The ALJ issued an unfavorable decision on May 23, 2017.[7] On April 26, 2018, the Appeals Council denied the plaintiff's request for review.[8] The plaintiff then filed a civil action seeking judicial review of the Commissioner's decision on May 23, 2017, and the district court remanded the case for further proceedings on June 11, 2019.[9] On February 4, 2020, the ALJ held a hearing and heard testimony from the plaintiff and a vocational expert.[10] The ALJ issued a second unfavorable decision on April 17, 2020.[11] On October 22, 2020, the Appeals Council upheld the decision, and the ALJ's decision became the final administrative decision.[12] The plaintiff filed this action on November 23, 2020, and the parties each moved for summary judgment.[13] All parties consented to the undersigned's jurisdiction.[14]

**2. Medical Records**

The plaintiff contended that he was disabled because of the following conditions: anxiety, panic disorder, depression, chronic lower-back pain, sleep apnea, chronic fatigue, chronic

---

[3] AR 177–84.

[4] AR 104; AR 110.

[5] AR 116.

[6] AR 34–66; AR 507–21.

[7] AR 15–29.

[8] AR 1–3.

[9] AR 554–581.

[10] AR 479–503.

[11] AR 507–521.

[12] AR 446–49.

[13] Compl. – ECF No. 1; Mot. – ECF No.14; Cross-Mot. – ECF No. 18.

[14] Consent Forms – ECF Nos. 7, 9.

United States District Court
Northern District of California

prostatitis, and acid reflux.[15] The following records were submitted at the first administrative hearing: (1) records from Russell Alpert, M.D., a primary-care physician;[16] (2) records from Ralph Palmer, M.D., a treating psychiatrist;[17] (3) and records from state non-examining medical consultants Rebecca Hansmann, Psy.D., S. Amon, M.D., D. Haaland, M.D., and L. Colsky, M.D.[18] The second administrative hearing included records submitted from Natasha Krikorian, Psy.D, an examining clinical psychologist.[19] Because the plaintiff challenges the ALJ's weighing of the medical records, this order summarizes the disputed opinions.

### 2.1.1.  Russel Alpert, M.D. — Treating Physician

Dr. Alpert was the plaintiff's primary-care physician and saw him many times between February 6, 2012 and January 16, 2013.[20]

On February 6, 2012, the plaintiff complained of worsened anxiety and panic attacks because a work transfer required him to drive a long distance on the freeway.[21] Dr. Alpert prescribed Rozerem and Xanax to treat the plaintiff's chronic anxiety, panic attacks, and insomnia, gave a note for time off work, and diagnosed the plaintiff with anxiety.[22]

On July 18, 2012, Dr. Alpert diagnosed the plaintiff with chronic prostatitis and anxiety. The plaintiff had been out of work since the beginning of the week and needed a Xanax refill that he used "sparingly".[23] Dr. Alpert saw the plaintiff on August 3, 2012, noted that he missed work that week due to his anxiety, and diagnosed him with anxiety. The plaintiff was alert and oriented with no acute distress. The plaintiff appeared anxious and had a normal thought process.[24]

---

[15] AR 214.

[16] AR 342–68.

[17] AR 416–24; AR 429–31; AR 443–45; AR 735–37.

[18] AR 82–100.

[19] AR 719–29.

[20] AR 343–68.

[21] AR 352.

[22] *Id.*

[23] AR 342.

[24] AR 346–348.

Dr. Alpert examined the plaintiff on August 14, 2012, and diagnosed him with anxiety, chronic prostatitis, and GERD. [25] The plaintiff complained of anxiety and an inability to go to work because he did not like leaving the house.[26] He appeared moderately anxious, unshaven, and perseverating over his physical ailments. [27] Dr. Alpert referred the plaintiff to a psychiatrist. [28] On September 5, 2012, Dr. Alpert examined the plaintiff and diagnosed him with anxiety and agoraphobia with panic attacks.[29] On September 14, 2012, Dr. Alpert noted that the plaintiff was "very anxious," "feeling depressed," and "went to Sutter ER for anxiety." He diagnosed him with anxiety and acute depression.[30] Three days later, on September 17, 2012, Dr. Alpert saw the plaintiff, who said that he had not slept for two days.[31] Again, the diagnosis was anxiety.[32]

On October 15, 2012, Dr. Alpert saw the plaintiff following his hospitalization at John Muir hospital.[33] The plaintiff was "slowly improving" and "obsessed" with potential side effects from his prescribed medication.[34] He assessed his social and psychosocial habits as alert, oriented, and with no acute distress.[35] He appeared mildly anxious, with a normal thought process, mood, and a slightly flat affect.[36] His diagnoses had not changed and were acute depression and anxiety.[37] On December 3, 2012, Dr. Albert's psychiatric evaluation was that the plaintiff had "anxious slight psychomotor agitation" and a "normal thought process," and his chronic prostatitis and chronic

---

[25] AR 351.

[26] AR 349.

[27] AR 350.

[28] AR 351.

[29] AR 348.

[30] AR 354.

[31] AR 357.

[32] AR 359.

[33] AR 363.

[34] *Id.*

[35] AR 364.

[36] *Id.*

[37] *Id.*

temporomandibular joint dysfunction (TMJ) likely were exacerbated by his anxiety.[38] The plaintiff was unable to tolerate the CPAP machine for his sleep apnea.[39]

On January 16, 2013, the plaintiff suffered from severe anxiety and insomnia and required a psychiatric follow up. His chronic prostatitis was "clinically improving."[40]

### 2.1.2.  Rolf Palmer, M.D. — Treating Psychiatrist

Rolf Palmer, M.D., treated the plaintiff from October 18, 2012 to June 7, 2019, and diagnosed him with major depression, anxiety disorder, panic attacks, and agoraphobia.[41]

On November 26, 2012, Dr. Palmer described the plaintiff as "wildly depressed, wildly anxious" and "above all fragile, defensive." [42] On June 8, 2013, Dr. Palmer described the plaintiff's baseline as "always anxious, alarmed with racing thoughts" and fatigue.[43] On October 18, 2013, he noted that the plaintiff's physical complaints prevented him from working, but that he was "somewhat obsessive about things."[44] He increased the plaintiff's Zoloft medication on March 21, 2014.[45] That day, the plaintiff reported that he got his job back but subsequently resigned.[46] On August 8, 2014, Dr. Palmer encouraged the plaintiff to apply for Social Security disability benefits based on his physical complaints (sleep apnea, obesity, chronic prostatitis, and lower-back pain) as well as his mental-health issues.[47] During a December 2014 visit, his mother drove him to his psychiatric evaluation because he suffered from panic attacks while driving on the freeway.[48] As a result of the plaintiff's agoraphobia, he did not leave the house.[49]

---

[38] AR 368.

[39] AR 366.

[40] AR 360–62.

[41] AR 416–24; AR 429–31; AR 443–45; AR 735–37.

[42] AR 420.

[43] AR 418.

[44] AR 417.

[45] AR 416.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

On September 6, 2015, Dr. Palmer said that the plaintiff's anxiety continued to hinder his ability to drive.[50] He described the plaintiff as perseverating on his physical ailments and poorly shaven, and he noted that the plaintiff had not left the house for weeks because of his agoraphobia.[51] On January 26, 2016, Dr. Palmer described the plaintiff's condition as unchanged since September, described his anxiety was "fairly well controlled," and said that his sleep condition affected his motivation.[52] On October 21, 2016, the plaintiff continued at his baseline, with a steady diagnosis of panic disorder with agoraphobia.[53] On February 10, 2017, the plaintiff remained "impaired," never leaving his house due to chronic fatigue and continued agoraphobia. Dr. Palmer questioned the plaintiff's desire to improve his mental health but also noted that the plaintiff's resistance to change was a prominent feature of his condition for five years.[54]

By June 2017, the plaintiff's condition remained the same. He was still "impaired" and unable to work in December 2018.[55] The plaintiff rarely left his home and had a low motivation to manage many tasks.[56] When he evaluated the plaintiff on June 7, 2019, Dr. Palmer described the plaintiff's life as "very frugal," noted that he would not complete basic tasks (such as laundry) until a "crisis" occurred, and called his procrastination "fatal."[57] Between June 2019 to December 2019, the plaintiff's condition remained unchanged.[58]

### 2.1.3.  Natasha Krikorian, Psy.D. — Examining Clinical Psychologist

On November 24, 2019, Dr. Krikorian conducted a consultative psychological examination on the plaintiff at the Social Security Administration's request.[59] Dr. Krikorian reviewed the treating

---

[50] AR 444.

[51] *Id.*

[52] *Id.*

[53] AR 445.

[54] *Id.*

[55] AR 735–37.

[56] AR 737.

[57] *Id.*

[58] *Id.*

[59] AR 719.

psychiatrist's medical records from 2014–2017 and conducted a mental-status exam and other psychological evaluations.[60]

Dr. Krikorian conducted a Mini Mental State Examination (MMSE), a thirty-point questionnaire test that screens for cognitive impairment, and found that the plaintiff was unimpaired.[61] A score greater than or equal to twenty-five points is "effectively normal," and the plaintiff scored a thirty out of thirty.[62] The results demonstrated that the plaintiff had no difficult following simple or complex directions, and overall cognitive functioning was unimpaired.[63] The plaintiff appeared to have impaired emotional functioning.[64] His IQ was average, in the thirtieth percentile.[65] His verbal comprehension was average, perceptual reasoning was low average, working memory was low average, and processing speed was low average.[66] For the tests of memory skills, the plaintiff was in the fifth percentile for immediate memory, the twenty-first percentile for delayed memory, the tenth percentile for auditory memory, and the nineteenth percentile for visual memory.[67] He was in the impaired range for the Trail Making Test, which measures the presence of possible brain damage, visual attention, task switching, mental flexibility, processing speed, and executive functioning.[68]

Dr. Krikorian diagnosed the plaintiff with unspecified anxiety disorder, agoraphobia, and unspecified depressive disorder.[69] The plaintiff did not have an impaired ability to understand, remember, and perform simple or complex written and oral instructions, or an inability to maintain

---

[60] AR 719–29.

[61] AR 722.

[62] Id.

[63] Id.

[64] Id.

[65] AR 723.

[66] Id.

[67] AR 724.

[68] Id.

[69] AR 725.

concentration during a normal workday.[70] The plaintiff did have moderate to marked impairments in his ability to adapt to work stress or changes in a work setting, perform scheduled activities, maintain regular attendance, and complete a normal workday or workweek without interruptions from his psychiatric conditions.[71] He could handle funds in his own best interest.[72]

### 2.1.4.  State Non-Examining Medical Consultants

Medical consultants Rebecca Hansmann, Psy.D., D. Haaland, M.D., S. Amon, M.D., and L. Colsky, M.D., reviewed the plaintiff's medical records.[73] Their findings are summarized in a disability-determination evaluation report at the reconsideration level.[74] Based on their review of the plaintiff's medical history, the consultants diagnosed the plaintiff with (1) severe disorders of the urinary tract, (2) severe spine disorder, (3) severe anxiety disorder, and (4) non-severe affective disorder.[75] They concluded that the plaintiff's impairments did not impose more than moderate limitations and designated him not disabled.[76]

## 3.  Administrative Proceedings

### 3.1. Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations, one related to the plaintiff's initial application and one at the reconsideration level.

---

[70] AR 725–26.

[71] AR 726.

[72] *Id.*

[73] AR 82–100.

[74] *Id.*

[75] AR 91.

[76] AR 98.

United States District Court
Northern District of California

At the initial level, the state doctors found the following impairments to be severe: (1) other disorders of the urinary tract, (2) spine disorders, and (3) anxiety disorders.[77] The doctors found the plaintiff to be not disabled despite the identification of these impairments.[78]

On reconsideration, the doctors found the following impairments to be severe: (1) anxiety disorders, (2) other disorders of the urinary tract, and (3) spine disorders.[79] The doctors again found the plaintiff to be not disabled despite the identification of these impairments.[80]

### 3.2. Administrative Hearing

The ALJ held a hearing on February 4, 2020. The plaintiff appeared and testified. VE Jose Chaparro testified by telephone.[81]

#### 3.2.1.  Plaintiff's Testimony

The ALJ questioned the plaintiff. He testified that he was 49 and lived in Antioch, California, with his mother.[82] He stopped attending school in 10th grade, did not complete his high-school education, and has no vocational training.[83] He worked as a meat clerk at Lucky's supermarket for twenty years until August 2012 and has not worked since.[84] His duties included packaging meat, stocking supplies, setting up food counters, and customer service.[85] Due to his anxiety and agoraphobia, he was unable to maintain a stable work schedule and would call in sick three to four times a month.[86] To minimize his anxiety, he requested the "least stressful shifts" and specifically asked for part-time work hours.[87] While working at Lucky's, he would get panic attacks and hide

---

[77] AR 73.

[78] AR 79.

[79] AR 91.

[80] AR 98.

[81] AR 481–503.

[82] AR 483.

[83] AR 484.

[84] *Id.*

[85] *Id.*

[86] AR 484–85.

[87] AR 485.

United States District Court
Northern District of California

in the bathroom.[88] He described experiencing a panic attack as "think[ing] you're dying" and having an accelerated heart rate and feeling dizzy.[89] His anxiety is caused by worrisome situations, such as being at work at a certain time, but has improved since he stopped working.[90]

The plaintiff rarely leaves his house since he stopped working.[91] As a result, it would be difficult for him to receive more frequent treatment because he depends on his mother to drive him to his doctor's appointments. He does not have active friendships and socializes only at occasional family events.[92]

The ALJ asked the plaintiff how his "TMJ" was doing, and he responded that it hurts every day and makes his ears ring, and he manages his pain with Ibuprofen.[93] The ALJ also asked plaintiff about his sleep apnea and difficulty sleeping.[94] The plaintiff answered that he "wake[s] up every couple of hours" or can't "sleep at all."[95] To manage his fatigue, chronic anxiety, and agoraphobia, the plaintiff tries to maintain a simple routine and takes the highest dose of his antidepressant.[96]

### 3.2.2.   VE's Testimony

VE Jose Chaparro testified telephonically at the February 4, 2020 hearing.[97] The ALJ asked the VE to characterize the plaintiff's prior work according to the Dictionary of Occupational Titles.[98] He responded that the plaintiff worked as a meat clerk, an unskilled position (medium, SVP 2).[99]

---

[88] AR 488.

[89] *Id*.

[90] AR 485–87.

[91] AR 486.

[92] *Id.*

[93] AR 489.

[94] AR 489–90.

[95] *Id*.

[96] AR 491–92.

[97] AR 496–501.

[98] AR 498.

[99] *Id.*

United States District Court
Northern District of California

The ALJ posed the first hypothetical to the VE: a person of the claimant's age, education, and work experience limited to occasionally "lifting and carrying 20 pounds" and "sitting six hours in an eight-hour day, standing, and walking six."[100] The person would "occasional[ly] climb, frequent balance, and stoop, occasional kneel and frequent crouch, occasional crawl," and could perform "detailed but non-complex tasks," but was able to interact occasionally with coworkers and the public.[101] The VE testified that the following jobs were available: (1) marker, (2) housekeeping, (3) cleaner, and (4) routing clerk.[102]

The ALJ posed the second hypothetical to the VE. In addition to the conditions of the previous hypothetical, the person was absent from work "two days a month."[103] The VE testified that no jobs were available to an individual who was absent from work two days a month.[104]

The plaintiff's representative questioned the VE. To the ALJ's first hypothetical, he added that the individual was "off task 10 to 15 percent of the time."[105] The VE testified that no jobs were available to an individual.[106]

### 3.3. ALJ Findings

The ALJ analyzed the five-step process to determine whether the plaintiff was disabled and determined that he was not.

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the application date on August 4, 2016.[107]

---

[100] AR 498–99.

[101] AR 499.

[102] *Id.*

[103] AR 500.

[104] *Id.*

[105] AR 501.

[106] *Id.*

[107] AR 458.

United States District Court
Northern District of California

At step two, the ALJ found that the plaintiff had the following severe impairments: (1) anxiety disorders (including panic disorder and agoraphobia); (2) depressive disorder; personality disorder; (3) spine disorder; (4) obesity; and (5) urinary tract disorder.[108]

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[109]

Before reaching step four, the ALJ determined the plaintiff's RFC:

> The plaintiff has the residual functional capacity to perform less than the full range of light work. He can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit for 6 hours in an 8-hour workday; can stand and walk for 6 hours in an 8-hour workday; can push and pull as much as he can lift or carry; can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, and crouch; and can occasionally crawl. He can perform detailed, but noncomplex tasks and is able to interact occasionally with coworkers and the public.[110]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[111]

At step five, the ALJ found that the following jobs were available to the plaintiff: (1) marker; (2) housekeeping cleaner; and (3) routing clerk.[112]

The ALJ found that the plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy" and concluded that the plaintiff was "not disabled."[113]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d

---

[108] AR 459.

[109] *Id.*

[110] AR 461.

[111] AR 472.

[112] AR 473.

[113] *Id.*

586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she

United States District Court
Northern District of California

has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) failing to give proper weight to medical opinions and evidence, (2) rejecting his symptom testimony, and (3) finding that he did not meet the Paragraph C criteria for listing 12.06 (Anxiety disorder).

### 1. Whether the ALJ Erred in Weighing the Medical Evidence

The plaintiff contends that the ALJ erred by (1) giving "limited weight" to the opinion of Dr. Krikorian and (2) giving greatest weight to the opinion of Dr. Martin and the state non-examining consultants.[114] The defendant counters that the ALJ properly evaluated the opinion evidence in assessing the plaintiff's ability to work.[115] The court holds that the ALJ erred in weighing these opinions and remands on this ground.

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). ("[A] reviewing court must consider the entire record as a

---

[114] Mot. – ECF No. 14 at 19–24.

[115] Cross Mot. – ECF No. 18 at 8–12.

United States District Court
Northern District of California

whole and may not affirm simply by isolating a specific quantum of supporting evidence.")
(cleaned up).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 178 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[116] Social Security regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (cleaned up). By contrast, if the ALJ finds that the opinion of a treating or examining physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Charter*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." (cleaned up). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with

---

[116] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, governs based on the plaintiff's filing date, July 25, 2016.

United States District Court
Northern District of California

boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole [, and] the specialty of the physician providing the opinion. . . . " *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

The plaintiff contends that the ALJ erred by giving "less weight" to the opinion of Dr. Krikorian, and, conversely, the greatest weight to the opinions of Dr. Martin and the state non-examining consultants.

On November 24, 2019, the Social Security Administration requested that Dr. Krikorian examine the plaintiff and review his psychiatric records from 2014–2017, including progress notes indicating a poor emotional prognosis.[117] She opined that the plaintiff had marked impairments in his ability to complete a normal workday or workweek without interruptions resulting from a psychiatric condition. She also opined that he had moderate to marked impairments in his ability to perform activities within a schedule and maintain regular attendance and adapt to the usual stresses common to a competitive work environment including completing a normal workday or workweek and responding appropriately to changes in a work setting. Lastly, she opined that the plaintiff had absent or minimal limitations in his ability to (1) understand, remember and perform simple or complex written and oral instructions, (2) interact appropriately with others including co-workers, supervisors, and the public, and (3) maintain concentration, attention, and persistence or consistency during a normal workday.[118]

---

[117] AR 719.

[118] AR 726.

United States District Court
Northern District of California

On June 30, 2015, Dr. Martin examined the plaintiff and conducted a psychiatric evaluation on at the request of the Social Security Administration.[119] Dr. Martin did not review the entirety of the plaintiff's psychiatric records. He opined that the plaintiff had moderate limitations in (1) his ability to complete a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition and (2) his ability to deal with the usual stresses encountered in competitive work environments. He also opined that the plaintiff had mild limitations in his ability to (1) perform detailed and complex tasks versus simple and repetitive tasks, (2) maintain regular attendance in the workplace, and (3) perform work activities without special or additional supervision. Finally, he opined that the plaintiff was not significantly limited in his ability to (1) accept instructions from supervisors, and (2) interact with coworkers and with the public.[120]

The State non-examining psychologists (Dr. Hansmann, Dr. Colsky, and Dr. Haaland) reviewed the plaintiff's medical record at the reconsideration level.[121] They concluded that the plaintiff's impairments did not impose more than moderate limitations, consistent with Dr. Martin's findings, and concluded that he was not disabled.[122] They opined that the plaintiff had moderate limitations in his ability to (1) respond appropriately to changes in the work setting, (2) complete a normal workday and workweek without interruptions from psychologically based symptoms, (3) maintain attention and concentration for extended periods, and (4) get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[123]

Dr. Krikorian is an examining psychologist, and her opinion is contradicted. Thus, the ALJ was required to give specific and legitimate reasons based on substantial evidence to discount her opinion. *Garrison*, 759 F.3d at 1012. The ALJ gave Dr. Krikorian's opinion less weight because "she evaluated the claimant in November 2019, which is more than a year and a half after the date last insured on March 31, 2018." Additionally, the ALJ afford Dr. Krikorian's opinion less weight

---

[119] AR 436.

[120] AR 441.

[121] AR 82–100.

[122] AR 98.

[123] AR 95–96.

because her "written report is not wholly consistent with the checkbox form. While the written report notes one marked limitation, the checkbox form does not note any marked limitations."

First, while the ALJ's explanation of the weight given to Dr. Krikorian's opinion may be "specific," it is not "legitimate." Dr. Krikorian conducted the psychiatric evaluation in November 2019 at the Social Security Administration's request. Thus, assigning her opinion less weight on this fact alone is erroneous. Rather than assess Dr. Krikorian's ten-page report — that included a mental status examination and a review of the plaintiff's medical record from 2014 to 2017 — the ALJ offered no explanation and thus provided no legitimate reason for reaching this conclusion.

Second, the ALJ's assertion that Dr. Krikorian's written report is inconsistent with the checkbox form is not supported by the evidence. Dr. Krikorian filled out a two-page checkbox form provided by the Social Security Administration. The form addresses certain work-related behavior and functioning. The first page asked whether the plaintiff's ability to understand, remember, and carry out instructions was impaired.[124] The second page asked whether the plaintiff's ability to interact with supervisors, co-workers, and the public was impaired.[125] Dr. Krikorian's responses are consistent with her written report, as she marked "none" or "moderate" impairment to these questions. Unlike the written report, the form did not ask about adaptability to stresses, attendance, or the ability to complete a workday without interruptions from psychiatric conditions.[126] Therefore, the ALJ's contention that Dr. Krikorian's written report is inconsistent with the checkbox form is not supported by the evidence.

In sum, the ALJ erred in weighing the medical evidence, and the court remands on this ground.

## 2. Whether the ALJ Erred by Discounting the Plaintiff's Testimony

The plaintiff contends that the ALJ erred by failing to provide clear reasons for rejecting his testimony about the severity of his symptoms.[127] He asserts that his mental impairments disrupt his

---

[124] AR 727.

[125] AR 728.

[126] AR 726.

[127] Mot. – ECF 14 at 12.

United States District Court
Northern District of California

ability to perform work within a schedule, maintain attendance, and remain on task throughout a work week.[128] The defendant counters that the ALJ properly discounted the plaintiff's testimony with specific reasons that illustrate its inconsistency with the medical record.[129] Despite his depression, anxiety, and agoraphobia-related symptoms, the ALJ concluded that the plaintiff can perform unskilled work delineated in his RFC.[130] The court finds that the ALJ failed to consider the plaintiff's agoraphobia and remands on this issue.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether [the claimant has presented] objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* (cleaned up). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."

"Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (cleaned up). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014); *see, e.g., Morris v. Colvin*, No. 16-CV-0674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

In order to have a meaningful appellate review, the ALJ must explain its reasoning and "*specifically identify* the testimony [from a claimant] she or he finds not to be credible and … explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d

---

[128] *Id.*

[129] Cross Mot. – ECF 18 at 4–10.

[130] AR 472–73.

United States District Court
Northern District of California

1090, 1102–03 (9th Cir. 2014) ("Credibility findings must have support in the record, and hackneyed language seen universally in ALJ decisions adds nothing.") (cleaned up). "That means [g]eneral findings are insufficient." *Id.* at 1102; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("the ALJ must make a credibility determination with findings sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony" (citing *Bunnel v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). Moreover, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

Here, except for the plaintiff's agoraphobia, the ALJ reasonably concluded that the plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not wholly consistent with the record. The ALJ considered inconsistencies in testimony and the plaintiff's failure to seek treatment or a prescribed course of treatment. He found the following:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the evidence as a whole indicates that, through the date last insured of March 31, 2018, he was capable of performing a range of light work with [non-exertional] limitations set forth in the residual functional capacity finding above. The limitation to no more than occasional interaction with coworkers or the public is in response to the claimant's history of panic attacks and agoraphobia.[131]

First, the ALJ considered inconsistencies between the plaintiff's testimony and the objective medical record. For example, the plaintiff alleged that his memory deficits interfered with his concentration and memory.[132] His Trail Making Test, however, revealed absent or minimal limitations in his ability to remember simple or complex written and oral instructions.[133] Dr. Krikorian's mental-status exam on November 24, 2019, found that his memory is "unimpaired" and he was able to "[recall] 2 out [of] three items immediately and 3 of three words after a 5-minute delay with interference."[134] Similarly, the plaintiff's treating psychiatrist indicated that he

---

[131] AR 463.

[132] AR 228–29; AR 462.

[133] AR 724–26.

[134] AR 721.

had normal memory.[135] While the plaintiff testified that he suffers from fatigue due to sleep apnea, Dr. Palmer's June 2018 note undercuts his credibility.[136] The ALJ noted that the plaintiff had not visited his primary care-physician about a CPAP machine to alleviate his sleep apnea.[137]

Second, the ALJ found that the plaintiff's own assessments were inconsistent with his allegations. Treatment records related to the plaintiff's medical improvement establish that he reported improvement on or around October 2012, slight improvement in December 2012, and was using his anti-anxiety medication "sparingly."[138] By May 2013, the plaintiff reported "controlled" symptoms and a treating physician made the same assessment.[139] This was a specific, clear, and convincing basis for discounting the plaintiff's testimony.

As discussed above, the ALJ erred by assigning little weight to the medical opinions of Dr. Alpert and Dr. Krikorian, who diagnosed the plaintiff with agoraphobia. Accordingly, the ALJ also erred by failing to provide specific, clear, and convincing reasons to discount plaintiff's testimony about his agoraphobia. The ALJ aimed to mitigate the plaintiff's agoraphobia-related symptoms by limiting his interactions with the public and co-workers to one-third of the workday.[140] The plaintiff, however, did not testify that public interactions were a contributing factor to his agoraphobia.[141] Instead, he testified that his agoraphobia improved since he stopped working because he was unable to maintain a work schedule.[142] He also testified that he manages his agoraphobia by keeping a simple routine.[143] Thus, the ALJ failed to provide specific reasons to discount plaintiff's agoraphobia-related testimony.

---

[135] AR 465.

[136] AR 468.

[137] *Id.*

[138] AR 22–23; AR 373.

[139] AR 22–23; AR 375.

[140] AR 463.

[141] AR 42; AR 460.

[142] AR 484–85.

[143] AR 491.

United States District Court
Northern District of California

### 3.  Whether the ALJ Erred at Step Three

The plaintiff contends that the ALJ erred by determining that he did not meet the Paragraph C criteria for listing 12.06(c) for anxiety.[144] The defendant counters that the ALJ properly relied on the lack of supporting evidence that plaintiff failed to provide.[145]

At step three of the five-step framework, "[i]f a claimant has an impairment or combination of impairments that meets or equals a condition in the "Listing of Impairments," then the claimant is presumed disabled." *Lewis*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). "Medical evidence will be found "if the medical findings are at least equal in severity and duration to the listed findings." *Marcia*, 900 F.2d at 175–76 (quoting 20 C.F.R. § 404.1526). Accordingly, at step three, "the ALJ must explain adequately his evaluation of the alternative tests and the combined effects of the impairments" to determine whether a claimant equals a Listing. *Id.* at 176.

To meet the paragraph B criteria for listings 12.06(c) (anxiety disorder), a claimant must demonstrate an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; (4) Adapt or manage oneself." *Id.* In order to meet the C criteria for listing 12.06(c), a claimant must have a "mental disorder . . . [that] is serious and persistent. . . ." Put another way, there must be a medically documented history of the disorder over a period of at least two years, and "evidence of both (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and (2) Marginal adjustment, that is,

---

[144] Mot. – ECF No. 14 at 25.

[145] Cross Mot. – ECF No. 18 at 13.

1   you have a minimal capacity to adapt to changes in your environment or to demands that are not

2   already part of your daily life." *Id.*

3       The claimant bears the burden of proving that an impairment or combination of impairments

4   meets or equals the criteria of a listing. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). "An

5   ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not

6   meet or equal a listed impairment. *Lewis*, 236 F.3d at 512. Generally, a "boilerplate finding is

7   insufficient to support a conclusion that a claimant's impairment does not meet or equal a listing"

8   unless the ALJ's discussion of the relevant medical evidence adequately supports the conclusion.

9   *Id.* at 512013; *see also, e.g., Marcia*, 900 F.2d at 176. (noting that ALJ's unexplained finding at

10  step three was a reversible error).

11      The ALJ concluded that the severity of the plaintiff's mental impairments did not meet the

12  paragraph B criteria for listing 12.06(c) because they did not cause at least two "marked"

13  limitations or one "extreme" limitation.[146] Relying on a functional report in 2012, progress notes

14  from NorCal Urology Medical Group in 2012, progress notes from John Muir Behavior Health

15  Center in 2012, and a consultative mental status exam in 2015, he found the following:

16      In understanding, remembering[,] or applying information, the claimant had a mild
        limitation. He was able to describe his past psychiatric treatment, substance use,
17      and family medical, social, education, and work history. A mental status
        examination showed cooperative behavior, spontaneous speech with normal rate
18      and volume goal-directed thought content, no hallucinations, no delusions, no
        suicidal ideation, full orientation, and intact memory.
19
        In interacting with others, the claimant had a moderate limitation. He reported
20      rarely leaving home. However, he reported shopping for food and other items and
        occasionally going out to eat or to the movies, activities that indicate an ability to
21      interact with others in a commercial setting. He also reported he does not have any
        problems getting along with family, friends, neighbors or others.
22
        With regard to concentrating, persisting or maintaining pace, the claimant had a
23      moderate limitation. He stated that he struggled to follow and maintain a work
24      schedule. However, the claimant has been able to manage his own finances and has
        no problem following written or spoken instructions.
25
        As for adapting and managing oneself, the claimant had experienced a moderate
26      limitation. He reported handling stress and changes in routine badly. However, the

27  _____

28  [146] AR 461.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

claimant told the consultative psychological examiner that he was independent in basic activities of daily living and was able to take public transportation and drive a car.[147]

In addition, the ALJ determined the plaintiff did not meet the C criteria for listing 12.06(c) because the medical evidence "does not demonstrate medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that diminishes the symptoms and signs of the claimant's mental disorder."[148]

Here, while the ALJ provided evidence that he relied on for his paragraph B determination, he did not provide more than conclusory remarks concerning the paragraph C criteria. Without more information, the court cannot assess whether there was sufficient evidence underlying the ALJ's determination that the plaintiff did not meet the paragraph C criteria.

Additionally, the defendant's argument that the ALJ properly relied on a lack of supporting evidence is insufficient. The administrative record provides documentation of the claimant's severe anxiety disorder over a period of 2 years, and evidence that he received medical treatment (Zoloft), mental health therapy, and lived in a supportive environment with his mother.[149] Relying on Dr. Krikorian's consultative exam, the record documents the plaintiff's marked impairment in completing a normal workday or workweek without psychiatric interruptions. Thus, the administrative record does not lack supportive evidence.[150]

The court cannot assess whether there was sufficient evidence underlying the ALJ's determination that the plaintiff did not meet the paragraph C criteria for 12.06(c). Accordingly, the court remands for reconsideration of this issue.

### 4.   Remand for Further Proceedings or for Determination of Benefits

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further

---

[147] AR 460–61.

[148] *Id.*

[149] AR 270–756.

[150] AR 726.

proceedings or simply to award benefits is within the discretion of [the] court.") (citation omitted). Generally, "'[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.'" *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)) (alteration in original); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *McCartey*, 298 F.3d at 1077 (remand for award of benefits is discretionary); *McAllister*, 888 F.2d at 603 (remand for award of benefits is discretionary); *Connett*, 340 F.3d at 876 (finding that a reviewing court has "some flexibility" in deciding whether to remand).

Here, remand is appropriate so as to "remedy defects in the original administrative proceeding." *Garrison*, 759 F.3d at 1019 (cleaned up).

## CONCLUSION

The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: December 30, 2021

_____

LAUREL BEELER
United States Magistrate Judge